# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

FILED
RICHARD W. NAGEL
CLERK OF COURT
4/22/20

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
WEST. DIV. DAYTON

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
CELLULAR TELEPHONE ASSIGNED )
CALL NUMBER 213-507-6567 )
)

Case No.   3:20-mj-199

Michael J. Newman

**APPLICATION FOR A SEARCH WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC s. 841(a)(1) | possession with intent to distribute controlled substances |
| 21 USC s. 846 | conspiracy to distribute/possess with intent to distribute controlled substances |

The application is based on these facts:

See Attached Affidavit of Brian Turk

☑ Continued on the attached sheet.

☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Brian Turk, SA of the HSI
*Printed name and title*

Sworn to before me and signed in my presence via facetime.

Date: **11:52 AM, Apr 22, 2020**
**Via electronic means.**

City and state: Dayton, Ohio

Michael J. Newman, US Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER: 213-507-6567 | Case No. _3:20-mj -199_____ |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Brian Turk, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(l)(A) for information about the location of the cellular telephone assigned call numbers 213-507-6567 (the "**Target Telephone**"), whose service provider is Cellco Partnership d/b/a Verizon Wireless, a wireless telephone service provider headquartered at 180 Washington Valley Road Bedminster, NJ 07921. The **Target Telephone** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. I am a Special Agent of Homeland Security Investigations (HSI), United States Department of Homeland Security, am hereinafter referred to as Affiant.

3. Affiant is an employee of Homeland Security Investigations assigned to the Cincinnati Resident Office. Affiant has been employed with HSI since November of 2012. Affiant attended and graduated from the basic agent training course in Brunswick, Georgia. Prior to this, Affiant was a Special Agent for five years with the United States Secret Service (USSS) in Newark, New Jersey and a Border Patrol Agent for two years with the United States Border Patrol in Yuma, Arizona. Affiant has received extensive training in the investigation of narcotics trafficking and financial crimes from the USSS and Homeland Security Investigations, as well as ongoing in-service training.

4. Between August 2013 and April 2020, Affiant has been assigned to the Homeland Security Investigations (HSI) Border Enforcement Security Task Force (BEST) in Dayton, Ohio.

5. As a Special Agent for Homeland Security Investigations, Affiant is charged with the duty of enforcing among other Titles, the Controlled Substance Act, Title 21, United States Code, together with other assigned duties as imposed by federal law.

6. By virtue of Affiant's employment with the HSI, he performs and has performed various tasks which include, but are not limited to:

    a) Functioning as a surveillance agent for the primary purpose of observing and movements of drug traffickers and those suspected of trafficking in drugs;

    b) Functioning as a case agent which entails the supervision of specific aspects of drug investigations;

    c) The tracing and tracking of monies and assets gained by drug traffickers from the illegal sale of drugs.

6. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21 U.S.C. §§ 841 and 846 have been committed, are being committed, and will be committed by the user of the **Target Telephone** and others known and unknown. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations; and, will lead to the identification of individuals who are engaged in the commission of these offenses.

7. All the details of the investigation are not included in this Affidavit; only information necessary to establish probable cause that evidence associated with the above listed offenses have been committed, are being committed, and will be committed by the user of the **Target Telephone.**

**PROBABLE CAUSE**

8. In September 2019, law enforcement in Lancaster County, Nebraska, began investigating a drug trafficking organization (DTO) responsible for trafficking marijuana, a Schedule I controlled substance, throughout Eastern Nebraska. Through investigation, law enforcement learned that several of the DTO members operating in Nebraska were in communication via cellular telephone with other, unknown DTO members, who were supplying large quantities of controlled substances.

9. On January 19, 2020, law enforcement in Nebraska learned that a confidential informant ("CI") received a large quantity of controlled substances. The CI provided U.S. currency in exchange for the controlled substances to two males who were seen leaving the location under surveillance in a vehicle. Law enforcement conducted a traffic stop of the vehicle as part of this investigation. A probable cause search of the vehicle led to the discovery of $200,403.00 in U.S. currency concealed in a black plastic trash bag. The U.S. currency was rubber banded together in bundles and the U.S. currency had a strong odor of marijuana. There were two occupants of the vehicle when it was stopped; law enforcement seized a total of four cellular telephones from the two occupants.

6. Continuing their investigation, law enforcement in Nebraska obtained search warrants for the cellular telephones and conducted analysis of the information obtained. In one of the phones, law enforcement discovered several text message conversations about drug trafficking and money laundering.

7. As part of their investigation, law enforcement in Nebraska have conducted extensive historical telephone toll, cell site location, and some electronic surveillance on telephone numbers belonging to suspected DTO members. As a result, law enforcement learned of a U.S. company called, "Fast Box LLC" (hereinafter "FASTBOX"), which is a suspected front company that the DTO uses to transport controlled substances and bulk U.S. currency throughout the United States. Open Source research was conducted on FASTBOX, and it was found to have office warehouses in Nashville, Tennessee; Laurel, Maryland; Cincinnati, Ohio; North Hollywood, California; and, Miramar, Florida. Additional research has been conducted by law enforcement and limited information has

been discovered about the company FASTBOX. FASTBOX advertises on its website as an alternative to traditional portable storage moving solutions.

8. On April 11, 2020, law enforcement in Illinois observed a 2019 Buick Encore at a FASTBOX warehouse in Westchester, IL. The Buick is registered to Michael GARRINGER (aka "Dwight Adams") at 304 E. Franklin Street, Troy, Ohio, which is within the Southern District of Ohio. Further research using a public and private data solutions subscription service revealed that the phone number **213-507-6567** (the **Target Telephone**), a prepaid Verizon phone number, has been used by GARRINGER.

9. On April 14, 2020, the Oklahoma Highway Patrol made a traffic stop on a semi-truck and trailer that was contracted to transport 10 large wooden crates from the FASTBOX warehouse in New York to California. As a result of the traffic stop, law enforcement seized approximately $3.9 million in U.S. currency from the FASTBOX property in the trailer. Law enforcement noted the odor of marijuana coming from the currency.

10. On April 15, 2020, HSI Omaha SA Doug Reisz received information from a reliable source of information (hereinafter "SOI") about two representatives of FASTBOX that coordinate shipments for the company. One of the FASTBOX representatives is known to the SOI as "Dwight Adams" with telephone number **213-507-6567** (the **Target Telephone**). The SOI told SA Reisz that he has a legitimate and continuing business relationship with "Dwight" since 2011. The SOI further stated that s/he has exclusively communicated with "Dwight" to coordinate shipments for FASTBOX using the **Target Telephone**.

11. On April 17, 2020, Affiant and another law enforcement officer met with the SOI. The SOI stated that "Dwight" arranged for a drop-off and pickup at the FASTBOX warehouse in Cincinnati, Ohio, for the morning of April 18, 2020.

12. On April 18, 2020, Affiant and other law enforcement officers conducted surveillance at the FASTBOX warehouse in Cincinnati, which is within the Southern District of Ohio. Law enforcement observed GARRINGER and another unidentified male arrive at the warehouse in the morning and unload a semi-truck and trailer into the warehouse. Immediately thereafter, a second semi-truck and trailer arrived at the warehouse and left

approximately 30 minutes later. The second semi-truck arrived at the FASTBOX warehouse in North Hollywood, California on April 20, 2020.

13. Throughout the afternoon on April 18, 2020, law enforcement observed GARRINGER meet with several identified co-conspirators in shopping centers near the FASTBOX warehouse. From approximately 2:30 p.m. until 6:45 p.m., GARRINGER appeared to conduct four separate distribution loads of controlled substances out of the FASTBOX warehouse. On one occasion, agents observed Charles CONARD, who has a prior arrest for marijuana distribution, appear to show GARRINGER a large duffle bag before and after the transaction occurred. All four suspected loads followed the same pattern as described below:

    a. GARRINGER departs FASTBOX in his Buick leaving the U/M behind at FASTBOX. GARRINGER meets a vehicle operated by co-conspirator at a commercial shopping center near FASTBOX. GARRINGER leaves his Buick empty and gets into the vehicle operated by the co-conspirator. The co-conspirator gets out of the vehicle. GARRINGER drives away and conducts "heat runs" before eventually driving the vehicle to FASTBOX pulling it into the warehouse. Approximately thirty minutes later, GARRINGER departs FASTBOX and returns the vehicle to the co-conspirator, who is waiting at the commercial shopping center. GARRINGER gets back into his Buick and returns to the FASTBOX warehouse. Law enforcement conducts surveillance and observes the co-conspirator deliver the alleged narcotics within the Southern District of Ohio.

14. Affiant knows that collecting location information on the **Target Telephone** for a 30-day period will assist investigators to locate the user of the **Target Telephone**, which is being used to commit federal narcotics offenses; the information requested will assist HSI in identifying co-conspirators and additional cellular devices owned and operated by the targeted subject.

15. In my training and experience, Affiant has learned that Verizon is a company that provides cellular telephone access to the general public. Affiant also knows that providers

of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

16. Based on Affiant's training and experience, Affiant knows that Verizon can collect E-911 Phase II data about the location of the **Target Telephone**, by initiating a signal to determine the location of the **Target Telephone** on Verizon's network or with such other reference points as may be reasonably available.

## AUTHORIZATION REQUEST

23. Based on the foregoing, Affiant requests that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

24. Affiant further requests, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **Target Telephone** would seriously jeopardize the ongoing investigation, as such a disclosure would give

that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. See 18 U.S.C. § 3103a(b)(l). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. See 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. See 18 U.S.C. § 3103a(b)(2).

25. Affiant further requests that the Court direct Verizon to disclose to the government any information described in Attachment B that is within the possession, custody, or control of Verizon. Affiant also requests that the Court direct Verizon to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Verizon services, including by initiating a signal to determine the location of the **Target Telephone** on Verizon's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate Verizon for reasonable expenses incurred in furnishing such facilities or assistance.

26. Affiant further requests that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Telephone** outside of daytime hours.

27. Affiant further requests that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

*Brian Turk*
Brian Turk, Special Agent
Homeland Security Investigations

Subscribed and sworn to before me on April __22__, 2020.

*Michael Newman*
Michael J. Newman
United States Magistrate Judge

Honorable Michael J. Newman
United States Magistrate Judge

**Via electronic means.**

ATTACHMENT A

**Property to Be Searched**

1. The cellular telephone assigned call number 213-507-6567 (the "**Target Telephone**"), whose wireless service provider is Cellco Partnership d/b/a Verizon Wireless, a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, NJ 07921.

2. Information about the location of the **Target Telephone** that is within the possession, custody, or control of Verizon including information about the location of the **Target Telephone** if it is subsequently assigned a different call number.

## ATTACHMENT B

### Things to be Seized

All information about the location of the **Target Telephone** described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the **Target Telephone**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the **Target Telephone** described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Verizon is required to disclose the Location Information to the government. In addition, Verizon must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Verizon's services, including by initiating a signal to determine the location of the **Target Telephone** on Verizon' s network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate Verizon for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. See 18 U.S.C. § 3103a(b)(2).